UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHAEL MEL CADY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:13-cv-01533-SLD-TSH |
| SUPERIOR POOL PRODUCTS, | ) |
| Defendant. | ) |

ORDER

Plaintiff Michael Cady is suing his former employer, Superior Pool Products ("Superior") for firing him from his job at its warehouse, allegedly because of a back injury he suffered while working there, or complaints he made about the injury and his work conditions. Cady seems to be suing under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101–5/10-104; he may also be seeking to bring Illinois tort law claims. Second Am. Compl. 2–5, ECF No. 24. Before the Court are Defendant's Motion for Summary Judgment, ECF No. 65; and Plaintiff's Motion to Amend/Correct his Response to that Motion, ECF No. 74. Both motions are GRANTED, for the reasons explained herein; the case is DISMISSED WITH PREJUDICE.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Although, as explained below, Cady's claims appear to have either been forfeited or ruled untimely, they also fail on the facts adduced at summary judgment. The Court will briefly summarize these facts.[1]

---

[1] The facts recounted here are taken from the parties' undisputed material facts. Mot. Summ. J. 3–13, Amended Resp. 2–12, Mot. Amend/Correct Ex 1, and the appended exhibits. All facts are recounted and construed in the light most favorable to Plaintiff, the non-moving party. See *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th

1

Superior runs a pool supply distribution business. It operates a warehouse for pool supply storage and distribution near Peoria, Illinois, where Cady was hired on April 4, 2012. Cady was hired as a seasonal, at-will employee for the summer "high season," although he asserts that a superior, Ed Eschbach, assured him he would be kept on after the high season had ended. Cady Aff. ¶ 9–10, Resp. Mot. Summ. J. Ex. 1, ECF No. 71-1; Mot. Amend/Correct Ex. 2, ECF No. 74-2. Cady asserted in his job application that he was able to perform all the essential functions the job required, which included shipping, receiving, pulling orders, filing orders, checking transfers, cleaning the warehouse, cleaning the yard, unloading trucks, rearranging the showroom, cutting up pallets, and performing "cycle counts." Cycle counts involved going up and down ladders to check that various parts and supplies listed in the computer system were in fact present in the warehouse.

Cady at first did well at the job, receiving a pay raise on June 22, 2012. However, only a week later, a workplace dispute arose. Cady left work early on the afternoon of June 28, 2012, because, he asserts, work was slow and there was nothing for him to do. The next day, June 29, Cady was moving a pool wall in preparation for sending out a big order, and hurt his back. He notified his manager, Brian Devaney, either once or twice.[2] Devaney says he helped Cady with his work for awhile but ended up having to finish the job himself; Cady says that Devaney told him to do cycle counts instead, which Cady claims were too painful to do in view of his hurt back. The parties agree that after the disagreement between Devaney and Cady, Devaney told Cady to leave and not return the next day.

---

Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where facts are disputed, the source of the dispute is cited.

[2] Devaney's and Cady's versions of this story differ. *See* Cady Letter 2, Mot. Summ. J. Ex. D, ECF No. 65-4; Devaney Letter 2, Resp. Mot. Summ. J. Ex. 6, ECF No. 74-7.

Cady then went to Eschbach's office. Cady maintains that at this meeting, he said he hurt his back and "explained to him what happen[ed]"; Eschbach states that Cady loudly refused to do cycle counts and claimed that his back hurt, and he was going to go home. The two men bickered about the allocation of workplace responsibility. Cady claims that Eschbach brought up Cady's early departure the previous day, saying that other employees had gotten stuck with his work. Eventually, Eschbach told Cady that he was not being a "team player" and fired him.[3]

Later that day, Cady sent Eschbach two long text messages berating Eschbach for what Cady saw as favoritism toward Eschbach's son Jake, also an employee of Superior. The text messages accuse Eschbach of firing Cady because of this favoritism. Representatively:

> Well ed you got till tomorrow to change your mind about keeping me ..so sleep on it ….and asfar as the rest team player ive been 100percent ask any1 the blame comes to me when sorrel else fucks up.and your sappose to be a boss at work yet its your playground and your son does whatever he wants and brian fucks clot of stuff up and i get blamed you need to act like a boss and not a dad to your son at work and start putting your foot up peoples ass and shit would get better[.]

Mot. Summ. J. 5, ¶ 17. Cady was not permitted to return to work and was not rehired.

In October 2012, Cady submitted a handwritten narrative of the events described above to the Illinois Department of Human Rights ("IDHR"), in which he claimed: "I honestly believe I was fired because [Eschbach's] son [Jake] had to work and it seemed fishy to me that no one was there that day to help me[.]" Cady Letter 3. On December 3, 2012, he filed a formal complaint with IDHR, claiming that he was discharged due to his back injury in violation of the IHRA, but not mentioning retaliation or workers compensation benefits. After IDHR held a fact-finding conference on June 20, 2013, Cady formally withdrew the complaint before IDHR and sought a right-to-sue letter from the Equal Opportunity Employment Commission ("EEOC"). The letter

---

[3] Cady relates the "team player" comment; Eschbach wrote that "we were trying to create a team atmosphere," to which Cady was not, evidently, contributing. Cady Letter 3; Eschbach Letter 2, ECF No. 74-6.

was duly issued on October 28, 2013, and Cady, proceeding without an attorney, filed suit with this Court on November 13, 2013.

The original Complaint alleged discrimination under the IHRA and ADA. With leave of the Court, Cady amended the original Complaint on May 21, 2014, adding retaliation theories under both statutes. (Immediately beforehand, on June 17, 2014, he filed a second charge of discrimination, which expressed a theory of retaliation under the ADA. *See* Mot. Summ. J. Ex. J.) After the amended pleading deadline and without leave of the Court, on June 24, 2014, he filed a second amended complaint, indicating that he had also been prevented by Superior from filing a workers' compensation claim. On November 18, 2014, he again sought leave to amend his complaint by adding "workers compensation retaliation."

Cady was appointed counsel, and his earlier motions denied as moot. December 12, 2014 Text Order. Discovery was reopened so that newly-appointed counsel might develop the case further. Mar. 17, 2015 Order 6, ECF No. 66. Contemporaneously, Superior filed the motion for summary judgment currently before the Court. Cady responded, at first inadvertently filing an incomplete draft of the response, and then moving to file the complete response *instanter* (which motion is the second motion presently before the Court; it is granted). The motion for summary judgment is fully briefed.[4]

Earlier in 2015, Cady had filed a motion seeking leave to amend his complaint yet once more, this time by adding a "whistleblower claim" alleging that he had attempted to report Superior's alteration of time cards and time sheets, a failure to discipline or reprimand employees, and a failure to provide adequate work safeguards. Am. Mot. Leave 2, ECF No. 61. The Court ruled that Cady's earlier (and renewed) attempt to add "workers compensation retaliation" had already been as good as alleged in his second Amended Complaint, but that his

---

[4] Cady's attorney later moved to withdraw, which motion was granted. Aug. 4, 2015 Order, ECF No. 78.

request to add a "whistleblower" claim was untimely, and denied. Sept. 28, 2015 Order, ECF No. 95.

In the months since the motion for summary judgment was filed, Plaintiff has moved repeatedly for direction from the Court, discovery of various documents (although even the extended discovery deadline has long since passed), and appointment of new counsel.

## DISCUSSION

**I.    Legal Standard on a Motion for Summary Judgment**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

**II.     Analysis**

Superior moves for summary judgment as to all of Cady's claims because Cady has failed to show that any reasonable jury could find his firing from Superior was for discriminatory or retaliatory reasons under any of the relevant statutes, Mot. Summ. J. 14–19; because Cady admittedly could not perform the essential functions of his job when he was fired, *id.* at 19–23; because the ADA retaliation claim is time barred or was not exhausted, *id.* at 23–24; because Cady voluntarily dismissed the administrative consideration of his IHRA claims, *id.* at 24–26; because his alleged injury on a workers compensation theory is not compensable because he was unable to work when terminated, *id.* at 26–27; and because there is no evidence that Cady attempted to report any law violations by Superior, *id.* at 27–29.  Cady responds that there is a genuine issue of material fact as to the reasons for his termination, Resp. Mot. Summ. J. 13–14; but concedes that he was not a qualified individual with a disability under the ADA, *id.* at 14–15.

Although Cady would appear unambiguously to have conceded that he is not a qualifying individual under the ADA, the Court is mindful of the "less stringent standards" to which pro se filings are to be held, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and of the fact that, while Cady was briefly represented in this matter, he appears to have had a disagreement with and parted ways from his court-appointed attorney shortly after the filing in which he made the concession.  *See* Motion to Withdraw, ECF No. 76.  However, the concession is immaterial to the Court's ruling today, since, as explained below, Cady's claims are all dismissed on the basis of the sufficiency of his offered evidence of discrimination and retaliation.  Similarly, although it is unclear, as Superior argues extensively, whether many of Cady's state law claims could survive their voluntary dismissal before the IDHR—or, indeed, which claims he currently seeks

to bring—all the claims Cady has raised must fail on the strength of the evidence he has offered as to Superior's motive in firing him.

### A. The ADA Claims

To prevail on a claim of discrimination under the ADA, unlike a Title VII claim, a plaintiff must show that but for an impermissible discriminatory motive, he would not have been fired. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("[A] plaintiff complaining of discriminatory discharge under the ADA must show that his or her employer would not have fired him but for his actual or perceived disability; proof of mixed motives will not suffice."). Similarly, to make out a claim for retaliation under the ADA, one must show that one's opposition to "any act or practice made unlawful" by the ADA was the but-for cause of an adverse employment action. 42 U.S.C. § 12203(a); *see Prince v. Illinois Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010).

Since plaintiffs typically do not have direct evidence of discriminatory or retaliatory motive, they may (and generally do) show discrimination by the burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must show (for discrimination) that she is a member of a protected class and was meeting her employer's legitimate job expectations, or (for retaliation) that she engaged in statutorily protected expression; then she must show that she suffered an adverse employment action; finally, she must show (for discrimination) that other similarly-situated individuals were treated more favorably or (for retaliation) that there is a causal link between the protected expression and the adverse employment action. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001) (explaining retaliation); 42 U.S.C. § 12203(a); *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (explaining discrimination); 42 U.S.C. § 12112(a). Once this prima facie

showing has been made, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action, after which, the plaintiff must rebut the reason by showing discriminatory or retaliatory purpose. *Kersting*, 250 F.3d at 1117; *Coleman*, 667 F.3d at 845.

Thus, to prevail on an ADA claim of retaliation or discrimination, a plaintiff must show causation by these means *and* show that, but for the prohibited animus, the adverse employment action would not have occurred. Cady can do neither.

He cannot make out a circumstantial case under the ADA. He points to no direct evidence of discrimination or retaliation, so any case he has must be circumstantial. But under the indirect method, he makes no showing that he was meeting his employer's legitimate job expectations. Cady does not contest that he left work early on June 28, 2012, or that Eschbach cited this as a factor that contributed to Cady's termination (he was not a "team player"). His only showing that he was meeting his employer's legitimate job expectations is that he received a raise several days before the events that led to his termination. Cady makes no attempt to show that his refusal to perform cycle counts does not qualify as a failure to meet Superior's legitimate job expectations. Thus, he fails to make out a prima facie case for discrimination. All the more so does he fail to do so in his case for retaliation, since he identifies no protected activity under the ADA that he might have been engaged in. (Merely complaining about or reporting a workplace injury is not a protected activity under the ADA; a plaintiff must first "show that he took some step in opposition to a form of discrimination that the statute prohibits." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011).) Cady's filings have at times darkly alleged that he was prevented from complaining about Superior's misconduct in other arenas, but this is the "put up or shut up moment," *Johnson*, 325 F.3d at 901, and mere allegations, in the total absence of evidence, will not suffice.

Even were Cady to make out a prima facie case, he cannot show that a reasonable jury could conclude Superior's purported discriminatory or retaliatory animus was the but-for cause of his termination. The record brims with legitimate reasons for which Superior might have wished to terminate Cady. He admittedly left work early on June 28, leaving others to cover his job duties. He reportedly refused to perform other less-demanding tasks that his supervisors offered him in lieu of activities he refused. And the text messages he sent after his argument are, to say the least, intemperate, profanely and fulsomely insulting his supervisor and leveling individualized charges of corruption, laziness, imbecility, and deceptiveness (and nowhere mentioning Cady's back). What employer would not want to fire an employee who communicated his grievances like this?

Cady's ADA claims fail as a matter of law.

### B.  The IHRA Claims

The same fate befalls Cady's IHRA claims. To decide IHRA claims, Illinois courts use the analytical framework applied by the United States Supreme Court to Title VII cases and Age Discrimination in Employment Act cases. *Zaderaka v. Illinois Human Rights Comm'n*, 545 N.E.2d 684, 687 (1989). This means that, although Illinois courts do not require a showing of but-for causation in IHRA claims, they apply the *McDonnell-Douglas* burden-shifting approach. *Id.* For the reasons explained above, Cady cannot make out a prima facie case against Superior for discrimination or retaliation.

### C.  Illinois Tort Claims

Finally, Cady's claims under Illinois tort law—if indeed he brings any—fail at summary judgment as well. Generally, an at-will employee, which Cady undisputedly was, can be discharged at any time and for any reason. *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357

(1978).  However, if he was terminated for pursuing workers' compensation benefits, he has an action for retaliatory discharge.  *Id.*  To succeed, the employee must prove:  "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the discharge violates a clear mandate of public policy."  *Michael v. Precision All. Grp.*, LLC, 21 N.E.3d 1183, 1188 (Ill. 2014).  Here, Cady offers no evidence of any kind suggesting that he filed a workers' compensation claim before or after his termination, or that his termination was in retaliation for these activities.[5]  His tort claims fail.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment, ECF No. 65, and Plaintiff's Motion to Amend/Correct, ECF No. 74, are GRANTED.  The case is DISMISSED WITH PREJUDICE.  No further claims remaining, the Clerk is directed to enter judgment, and to close the case.

Entered this 24th day of February, 2016.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE

---

[5] Cady's affidavit claims that he was "never allowed to fill out work injury documentation."  Cady Aff. ¶ 49. However, the Illinois Workers' Compensation Act, 820 ILCS 305/1–305/30, requires employers to maintain records of injuries and requires employees to report those injuries to employers, *id.* at 305/6(b)–(c), but creates no separate right of action for the purported prevention of an employee's effort to "fill out work injury documentation."  Indeed, since the Act provides for the adjudication of claims by the Workers' Compensation Commission, it is hard to see how Superior could have "prevented" Cady from making such a claim.